UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| REGINALD KEITH COLVIN, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | CV-05-CO-01812-W |
| | ] | |
| VAIL'S CONSTRUCTION & | ] | |
| MAINTENANCE, INC., | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I.     Introduction.

The Court has for consideration defendant Vail's Construction and Maintenance, Inc.'s ("Vail's") Motion for Summary Judgment, which was filed on July 31, 2006.  (Doc. 22.)  Plaintiff Reginald Keith Colvin filed this action on August 29, 2005, alleging claims of discrimination and retaliation on the basis of race in violation of 42 U.S.C. § 1981 ("§ 1981").  (Doc. 1.) Specifically, Plaintiff alleges claims of disparate treatment with regards to job assignments, time off from work, the use of a company cellular

telephone, and wage discrimination.[1]  *Id.*  The issues raised in Defendant's

motion have been briefed by the parties and are now ripe for decision.

Upon full consideration of the legal arguments and evidence presented,

Defendant's motion is due to be granted in part and denied in part.

II.    Facts.[2]

Vail's is a company whose principal place of bushiness is in Carrollton,

Alabama, but operates in Tuscaloosa, Alabama, at the Nucor Steel Mill.

Vail's supplies labor for repair work, fabricates and installs equipment, does

concrete work, painting, construction, takes out the garbage, and other jobs

that Nucor asks Vail's to perform.   Stuart Vail is the president of Vail's

Construction, and the company's workforce ranges from fifteen to twenty-

five employees.   Stuart Vail's right-hand man and supervisor during the

---

[1]Plaintiff has voluntarily dismissed "any claim asserted by him regarding having a disciplinary deduction of $1 per hour for one week, as well as his race pay claim. . . ." (Doc. 24, p. 2.)  Therefore, these claims are due to be dismissed with prejudice.

[2]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

period Colvin was employed by Defendant was Steve Luker, a white male. Plaintiff is African-American and was employed by Defendant from the Summer of 2004 until July 8, 2005. Plaintiff performed various construction-type jobs for Defendant, including carpentry work, pouring concrete, replacing valves on a pump, welding handrails, replacing tin, and clean-up work. On July 8, 2005, Stuart Vail gave Plaintiff his paycheck, and it was agreed that Plaintiff no longer worked for Defendant. It is disputed as to whether Plaintiff quit or was terminated.[3]

III.    Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and

---

[3]The Court also has for consideration Motions to Strike filed by both Plaintiff and Defendant. (Docs. 27 & 28.) Both motions seek to strike statements made in the opposing party's brief which are irrelevant and immaterial to this Court's ruling on a motion for summary judgment in a case which involves allegations of race discrimination under § 1981. Therefore, both motions are due to be granted.

identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.    Discussion.

Plaintiff has alleged claims of racial discrimination and retaliation under § 1981.  (Doc. 1.)  Defendant argues that it is entitled to summary judgment as to all of Plaintiff's claims because no genuine issue of material fact exists, and, therefore, it is entitled to judgment as a matter of law. (Doc. 22, p. 16.)

A.    Disparate Treatment Claims.

Plaintiff's race discrimination claims under § 1981 are based upon allegations of disparate division of labor, preferential treatment for white employees who request time off from work, and the use of a company cellular telephone.  (Doc. 24.)  The analysis for claims arising under § 1981 mirrors the analysis for Title VII claims.   *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 843 n. 11 (11th Cir. 2000).  Also, a plaintiff alleging disparate treatment must show that the defendant intentionally treated him less favorably than similarly situated employees on the basis of race, and a plaintiff may employ direct, circumstantial, or statistical evidence to prove such discrimination.  *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983); *Standard v. ABEL Serv., Inc.*,

161 F.3d 1318, 1330 (11th Cir. 1998).  Mr. Colvin has offered no direct or statistical evidence and thus must rely on circumstantial evidence in his effort to prove his case.  Section 1981 claims based upon circumstantial evidence are reviewed by the Court by applying the three-step burden shifting analysis set out in the United States Supreme Court cases of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  Under this analysis, the initial burden lies with the plaintiff to establish "a *prima facie* case of racial discrimination."  *McDonnell Douglas,* 411 U.S. at 802.  Once the plaintiff has met the *prima facie* case requirement, the defendant must "articulate some legitimate, non-discriminatory reason for the [adverse employment action]."  *Id.*  This burden is "exceedingly light . . . .  At this stage of the inquiry, the defendant need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof."  *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004) (quoting *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983) (citation and internal quotation marks omitted)).  Finally, the burden returns to the plaintiff to prove by a preponderance of the

evidence that the defendant's reasons were simply pretext for discrimination. *Burdine*, 450 U.S. at 253 ("The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.").

The initial burden of establishing a *prima facie* case for Plaintiff's claims of race-based discrimination requires him to show: (1) that he is a member of a protected class; (2) that he was qualified to perform his job; (3) that he was subjected to adverse employment action; and (4) the employer treated similarly situated employees outside of the protected class more favorably. *See Knight v. Baptist Hosp. of Miami, Inc.,* 330 F.3d 1313, 1316 (11th Cir. 2003) (citing *McDonnell Douglas*, 411 U.S. at 802). Moreover, "[i]f a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). Defendant contends that Plaintiff cannot establish a *prima facie* case of disparate treatment race discrimination for each of Plaintiff's claims. (Doc. 22, p. 19.)  Defendant further argues that even if Plaintiff has met his

burden of establishing a *prima facie* case, it has provided legitimate, non-discriminatory reasons for its decisions.  *Id.*

It is undisputed that Mr. Colvin is a member of a protected class. (Doc. 22, p. 3.)  There is also no dispute regarding Plaintiff's qualifications for the job he held as he was employed by Defendant for approximately one year.  *Id.  See, e.g., Pace v. Southern Ry. Sys.*, 701 F.2d 1383, 1386 n. 7 (11th Cir. 1983) ("[W]here a plaintiff has held a position for a significant period of time, qualification for *that* position, sufficient to satisfy the prima facie case can be inferred.") (emphasis in original).  However, the third and fourth prongs of the *prima facie* case under the *McDonnell Douglas* framework, as well as Defendant's reasons behind its alleged discriminatory actions, are at issue for each of Plaintiff's allegations.

### 1.    Job Assignments.

Plaintiff complains that Defendant assigned him and other black employees to significantly more dangerous, difficult, and dirty tasks than other employees.  Plaintiff specifically complains of three "dirty" jobs which he alleges were assigned on the basis of race: cleaning out a hole in the metal shop, pouring a concrete slab, and "doing something" in the Nucor

basement.  (Doc. 23, Colvin Depo., pp. 118-19, 124, 127.)  Plaintiff also alleges that he, along with Anthony Sanders and Dedrick Beard, both black employees, was routinely assigned to work on top of a building that was "unsafe most of the time."  (Doc. 23, Sanders Depo., p. 23.)  Sanders testified that he thought "that was racist."  *Id.* at 22.  He also stated that white employees had not gone up to work on the top of the building for quite some time, and Beard agreed that black workers were assigned more difficult job assignments than their white counterparts.  (Doc. 23, Beard Depo., p. 24.) Plaintiff testified that he, Sanders, and Beard were "assigned the dirtiest job" - to pour and create a concrete slab - and that he and his coworkers were assigned to work in "that dusty hole, and [Vail] gave everybody [else] something easy to do."  (Doc. 23, Colvin Depo., pp. 120-21.)  However, when asked if the job assignment "was based on race discrimination?" Plaintiff responded, "I don't know."  *Id.* at 137.  He testified that he asked Stuart Vail for help, but such assistance was never provided, except for Steve Luker, who assisted Plaintiff because he told Plaintiff, "I feel sorry for you.  I'll help y'all."  *Id.* at 138.

Vail's defends its actions by stating that it is a construction and maintenance company working in a steel mill where there are no "clean" jobs available. (Doc. 22, p. 21.) Defendant notes that its president, Stuart Vail, who is white, worked together with Colvin and Beard, and Plaintiff even testified that Bryan McGee, a white employee, worked on the crew doing the cleaning job that Plaintiff found to be particularly dirty. (Doc. 23, Colvin Depo., p. 137.) However, Plaintiff also testified that McGee did not get into the hole in which Plaintiff was required to work. *Id*. Plaintiff stated that he assumed racism was the basis of Defendant's job assignments, even though he also admitted that he did not know how such assignments were made. *Id*. at 140-41. Defendant directs the Court's attention to Plaintiff's testimony that he does not know whether Stuart Vail made the job assignments based on who he believed to be the best employees to do the various jobs that needed to be completed on a given day. *Id*. at 139-40. According to Anthony Sanders, Defendant "put the best man on the job," and Grady Oliver, another black employee, asserts in his affidavit, "I have never seen, and I have never felt any race discrimination, in wages, terms or conditions at work at Vail's."

"The effect of the presumption of discrimination created by establishment of the prima facie case is to shift to the employer the burden of producing legitimate, nondiscriminatory reasons for the challenged employment action." *Combs*, 106 F.3d at 1528 (citing *McDonnell Douglas*, 411 U.S. at 802; *Burdine*, 450 U.S. at 254). "To satisfy that burden of production, 'the defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'" *Id.* (quoting *Burdine*, 450 U.S. at 254—55.) However, in order to meet his burden, the employer must produce "admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had *not* been motivated by discriminatory animus," *Id.* (quoting *Burdine*, 450 U.S. at 257), and "there must be 'evidence that [the] asserted reasons for discharge were *actually relied on*' or 'the reasons are not sufficient to meet the defendant's rebuttal burden,'" *IMPACT v. Firestone*, 893 F.2d 1189, 1194 (11th Cir. 1990) (quoting *Lee v. Russell County Bd. of Educ.*, 684 F.2d 769, 775 (11th Cir. 1982)) (emphasis added). A defendant may not merely state that an employment decision was based

on choosing the "best qualified" applicant or employee.  *See Steger v. General Elec. Co.*, 318 F.3d 1066, 1076 (11th Cir. 2003).   Such a statement is only sufficient if it is accompanied by specific reasons why one employee is better qualified than another, such as "seniority, length of service in the same position, personal characteristics, general education, technical training, experience in comparable work or any combination" of such criteria.  *Id.*; *see also Brown v. Marriott Intern., Inc.*, 2006 WL 2189695, at *14 (N.D. Ga. July 31, 2006) (holding that the statement that the defendant hired the "best qualified" applicant can be legitimate if the defendant "articulates specific reasons why the applicant is the best qualified"); *Denney v. City of Albany*, 68 F. Supp. 2d 1369, 1377 (M.D. Ga. 1999) (finding that defendants satisfied their burden of articulating legitimate, non-discriminatory reasons for promotions because the successful candidates "were the best qualified" and defendants supported their conclusion by providing the specific qualifications that were considered).

Assuming Plaintiff has established a *prima facie* case of disparate treatment by showing that he and other black employees were assigned dirty, dangerous, and difficult jobs while their white counterparts were not

ordered to perform such work, Defendant has provided the following as a legitimate non-discriminatory reason for its job assignments:

> All work assignments made at Vail's are based, first, on Nucor's needs for any given workday, and, second, on putting the right person or team on the job, based on the employee or employee's skill set and ability to do the job right.  I've never made a job assignment based on race, which would be nonsensical, wrong and would certainly risk Vail's relationship with Nucor.

(Doc. 23, Vail Affid., p. 1.)  Defendant's proffered non-discriminatory reason is insufficient to satisfy his burden of production.  To say that job assignments are made by "putting the right person or team on the job" and that this is determined by Nucor's needs for the day, as well as an employee's "skill set and the ability to do the job right" is nothing more than stating that he assigned the "best qualified" employee to each assignment.  The Court is not holding that Defendant does not have specific, legitimate reasons for its assignments, but it has simply not provided such reasons to the Court at this time.  Without specific examples of how Defendant made its job assignments, it has offered nothing more than a "best qualified" statement, and Plaintiff is left without a chance to rebut

Defendant's assertions.  Therefore, summary judgment is due to be denied with respect to Plaintiff's claims of disparate treatment in job assignments.

        2.    Time Off.

      Plaintiff claims that Defendant was motivated by race when it denied his request for time off from work.  Plaintiff decided to play a joke on Stuart Vail on July 7, 2005, by calling Vail and telling him that he was tired and needed to take the day off.  (Doc. 23, Colvin Depo., pp. 213-15.)  On July 8, 2005, Colvin informed Vail that he wanted to leave work at 12:00 p.m. to take his car to the shop.  *Id*. at 215-16.  Vail denied the request because he needed Colvin on the job for the entire day.  (Doc. 23, Vail Depo., p. 63.)  Plaintiff responded that he didn't feel that it was fair that other employees were allowed to take off, but he was required to work.  *Id*. at 63-64.  Plaintiff also asked Vail, "are you prejudice or something?"  (Doc. 23, Colvin Depo., p. 218.)

      In his response brief, Plaintiff states that "the situation of time off has come up before for another employee of Defendant."  (Doc. 24, p. 25.)  He notes that Anthony Sanders testified at his deposition that racial prejudice motivated Vail's decision to deny his request for time off.  *Id*.  However,

Plaintiff has taken Sanders' testimony out of context.  Like Plaintiff, Sanders waited until the very day that he needed time off to request it.  (Doc. 23, Sanders Depo., p. 9.)  He testified that "at the moment" he "thought maybe some kind of prejudice came into play with [Vail's] decision . . . ."  *Id.*  But, he also stated that he "should have came [sic] a little earlier" and "asked [Vail] a day or two earlier instead of the same day."  *Id.* at 7.

Plaintiff's comparator, Bryan McGee, a white employee, previously requested a week's worth of vacation, but he turned in his request three months in advance.  (Doc. 23, Vail Depo., pp. 68-69.)  Providing three months notice for time off allows an employer to plan ahead when scheduling its employees.  Requesting the time on the very same day that the employee needs it places the employer in a bind when it requires all of its employees to meet the needs of that day's shift.

Steve Luker, Defendant's employee for almost three years, began missing days in the spring and summer of 2005.  He was terminated on August 29, 2005, and was notified of his termination in a September 2005 letter.  (Doc. 23, Vail Affid.)  According to Defendant, no record exists of Luker receiving company pay or benefits during September 2005 prior to his

receipt of the termination letter.  To the extent Defendant was reluctant to terminate Luker, Defendant provides that it "is attributable to the approximately three (3) years Luker had been Stuart Vail's right hand man." (Doc. 22, p. 24.)   Furthermore, Defendant states that Luker was a supervisor, whereas Plaintiff was not.

Plaintiff has simply failed to establish a *prima facie* case of disparate treatment with regards to his request for time off.  Even if the Court assumes that the denial of his time off request was an adverse employment action, Plaintiff has not shown that similarly situated white employees were treated differently than Plaintiff.  His comparator, Bryan McGee, turned in his request three months in advance, and Steve Luker was terminated after he began missing workdays.  Without a valid comparator, Plaintiff cannot establish a *prima facie* case of discrimination.   Therefore, Defendant is entitled to summary judgment as to Plaintiff's claim of disparate treatment with regards to Defendant's denial of his request for time off from work.

> 3.    Link Cellular Phone.

Plaintiff alleges that there was disparate treatment with regards to the use of a Link cellular telephone.   The phones at issue were assigned to

Plaintiff and Steve Luker.  Plaintiff states that he requested a Link phone so that he would not have to walk across the plant to find Steve Luker or Stuart Vail.  (Doc. 23, Colvin Depo., p. 177.)  Vail testified that Plaintiff requested the Link phone "so he could talk to Steve and stuff at home . . . and talk on personal matters with other people that had cell Links."  (Doc. 23, Vail Depo., p. 89.)  Vail did, on occasion, reach Plaintiff on the Link phone for business-related matters, and he testified that it was convenient for Plaintiff to have the phone.  (Doc. 23, Colvin Depo., p. 177.)  The agreement at that time was that Defendant would provide Plaintiff with a phone, but Plaintiff would pay the bill, which he did for two or three months.  *Id.* at 177 & 181.  When Plaintiff asked Vail about the bill he never mentioned racism or that he thought Defendant's refusal to pay the bill was racially motivated, but Vail decided to begin paying Plaintiff's Link phone bill.  *Id.* at 181.  It is undisputed that Steve Luker, a supervisor, received the use of a Link phone paid by Defendant.  (Doc. 23, Vail Depo., p. 88.)

In an effort to establish that Plaintiff was treated differently than a similarly situated white employee, Plaintiff asserts that he and Luker "both supervised employees on various projects while employed with Defendant."

(Doc. 24, p. 25.)    However, Dedrick Beard testified that Steve Luker supervised and oversaw the jobs that he and Plaintiff performed, but he stated that Colvin never supervised crews that included Steve Luker.  (Doc. 23, Beard Depo., p. 12.)  Plaintiff testified that Luker would come and check on work that Stuart Vail had assigned to him, but it was never the case that Plaintiff was asked to check on work performed by Luker.  (Doc. 23, Colvin Depo., p. 131.)    Stuart Vail testified that "[n]o one has the title [of supervisor] other than me and Steve Luker," and Nucor was only billed for two supervisors: Vail and Luker.    (Doc. 23, Vail Depo., pp. 12-14.) Moreover, at the time of his separation from employment, Colvin was paid $16 per hour while Luker was paid $20 per hour.  (Doc. 25, Exhibit 3.) Plaintiff has simply not provided evidence sufficient to support a finding that he was a supervisor.

Plaintiff has established that a white employee, Steve Luker, received the use of a paid Link phone by Defendant, but Plaintiff has not shown that Defendant's failure to pay the Link phone bill for three months amounted to adverse employment action or that he and Luker were similarly situated. Defendant made arrangements for Plaintiff to receive a Link phone, not out

of business necessity, but because Plaintiff requested it for his own convenience.  Furthermore, in exchange for the company purchasing the phone, Plaintiff agreed to pay the monthly bill.  Once he complained about having to pay the bill, Defendant agreed to start paying it.  Due to Plaintiff's failure to establish a *prima facie* case of discrimination, Defendant is entitled to summary judgment as to Plaintiff's claim of discrimination with regards to Defendant's failure to pay his Link phone bill.

B.    Retaliation.

Plaintiff has also asserted a claim for retaliation under § 1981.  A plaintiff may bring a § 1981 claim for retaliation "due to his opposition to race discrimination." *Tucker v. Talladega City Schools*, 171 Fed. App. 289, 294 (11th Cir. 2006) (citing *Andrews v. Lakeshore Rehab. Hosp.*, 140 F.3d 1405, 1412-13 (11th Cir. 1998)).  To successfully establish a *prima facie* case of retaliation under § 1981, a plaintiff must show: "'(1) [he] engaged in statutorily protected expression; (2) [he] suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression.'"  *Id*. at 296 (quoting *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1454 (11th Cir. 1998)); *see also Holifield v. Reno*, 115 F.3d 1555,

1566 (11th Cir. 1997).  After the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to produce legitimate reasons for the adverse employment actions.  *Id.* (citing *Johnson v. Booker T. Washington Broadcasting Serv.*, 234 F.3d 501, 507 n. 6 (11th Cir. 2000)).  Once the defendant has proffered legitimate reasons, the plaintiff must respond by showing that the reasons are mere pretext for retaliation.  *Id.*

Plaintiff believes that he engaged in statutorily protected expression when he asked Stuart Vail, "was he prejudice[d] or something?" (Doc. 23, Colvin Depo., p. 218; Vail Depo., p. 64.)  Plaintiff's question arose out of a conversation involving a request for time off from work which began over the telephone and continued on the job site.  He was inquiring into why Vail allowed a white employee to take time off but would not allow Plaintiff to take off half of the day to take his truck to the shop.  Vail testified that Plaintiff asked, "why do you let that white boy take off whenever he wants to, but you won't let me take off a half a day today?"  *Id.* at 68.

"To recover for retaliation, the plaintiff 'need not prove the underlying claim of discrimination which led to [his] protest.'"  *Holifield*, 115 F.3d at 1566 (quoting *Tipton v. Canadian Imperial Bank of Commerce*,

872 F.2d 1491, 1494 (11th Cir. 1989)).  The Eleventh Circuit has held that "a complaint of racial discrimination to superiors is a form of statutorily protected expression for purposes of § 1981."  *Bradford v. Rent-A-Center East, Inc.*, 346 F. Supp. 2d 1203, 1212 (M.D. Ala. 2004) (citing *Pipkins v. City of Temple Terrace, Fla.*, 267 F.3d 1197, 1201 (11th Cir. 2001)).  Casual comments do not warrant any less protection than formal complaints.  *Id.* at 1212-13 (finding that the plaintiff's comment, "I guess you have to be white to move up at Rent-A-Center" qualified as statutorily protected expression regardless of whether he proved his underlying claim of discrimination); *see also Rollins v. State of Fla. Dept. of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989) (stating that "the protection afforded by [Title VII] is not limited to individuals who have filed formal complaints, but extends as well to those, like [Plaintiff], who informally voice complaints to their superiors.").  A plaintiff, however, must show that he "had a good faith, reasonable belief that the employer was engaged in unlawful employment practices."  *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002).  This standard has been described by the Eleventh Circuit as follows:

> It is critical to emphasize that a plaintiff's burden under this standard has both a subjective and an objective component.  A plaintiff must not only show that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was *objectively* reasonable in light of the facts and record presented.  It thus is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable.

*Id*. at 1312 (quoting *Little v. United Tech., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)).

At the time Plaintiff made his comment, he may have subjectively believed that Vail's engaged in discriminatory employment practices since his complaint regarding time off was expressly focused on the difference in race between himself and a white employee who was granted his time off request.  However, Plaintiff must be able to show that his belief that Vail's was engaging in an unlawful employment practice was both formed in good faith and objectively reasonable.  As evidence that his belief was reasonable, Plaintiff notes that Stuart Vail recognized that Plaintiff was making a charge of racial discrimination because he responded by saying, "I

have preached at an all-black church before with me the only white person there, knelt at the altar with black people before.  I said, have you ever been to a white church and be the only black person there?"  (Doc. 23, Vail Depo., p. 78.)  Plaintiff also avers that he believed that he was treated differently than other, white, employees because Steve Luker did not have to pay the bill for his Link cellular phone, and Plaintiff felt as though job assignments were made on the basis of race.

The fact that Defendant is due to be granted summary judgment on Plaintiff's individual claims of discrimination, as discussed in the previous sections, does not prevent Plaintiff from relying on those allegations to formulate his good faith reasonable belief that Defendant was engaged in unlawful employment practices at the time he made the statement in question to Stuart Vail.  However, the evidence of record simply does not support a finding that Plaintiff's belief was objectively reasonable and formed in good faith.  Plaintiff testified that he never told Gray Oliver, Anthony Sanders, Dedrick Beard, or Tony Plott, all black co-workers, that he felt that he had suffered from race discrimination during his tenure at Vail's.  (Doc. 23, Colvin Depo., pp. 191-202.)  Plaintiff never told supervisor

Steve Luker that he thought he suffered from race discrimination at Vail's. *Id*. at 203. Furthermore, there is no evidence that Plaintiff ever told any of his white co-workers that he experienced race discrimination while employed by Defendant. *Id*. at 194-202. Colvin's former co-worker and friend, Anthony Sanders, testified that job assignments did not appear to be based on race or color, but, rather were based on skill, experience, and the ability to "get the job done right." (Doc. 23, Sanders Depo., pp. 10, 13-14.) Grady Oliver, another black coworker, "never saw Vail's even remotely discriminate against Reggie Colvin," and he has never seen, nor ever felt, any race discrimination in wages, terms, or conditions of employment at Vail's. (Doc. 23, Oliver Affid.) Dedrick Beard testified that the culmination of events between Colvin and Vail on July 8, 2005, arose, not out of Colvin "talking about prejudice," but out of Colvin's "jawing and complaining." (Doc. 23, Beard Depo., p. 30.) Finally, there is no evidence to support Plaintiff's contention that white employees were allowed to take time off while the requests of black employees were denied, since the white employee in question submitted his request three months in advance and Plaintiff made his request the very same day he wanted to take off.

For these reasons, it simply does not appear to the Court that Plaintiff had an objectively reasonable and good faith belief that Defendant was engaged in unlawful employment practices at the time he asked Stuart Vail, "was he prejudiced or something?"   Not until July 8, 2005, and the subsequent filing of this lawsuit, is there any evidence that Plaintiff felt that he experienced race-based discrimination at the hands of Stuart Vail and Defendant.   Rather than being based upon a history of discrimination, Plaintiff's comments appear to be a reaction to Vail's denial of his time off request.   Therefore, Plaintiff's inquiry into whether Stuart Vail's decisions were made due to his alleged prejudice was not protected speech for the purposes of establishing the first prong of the *prima facie* case requirement, and Defendant is entitled to summary judgment as to Plaintiff's § 1981 retaliation claim.

V.   Conclusion.

For the reasons stated above, Defendant's Motion for Summary Judgment is due to be granted in part and denied in part.   A separate order in conformity with this opinion will be entered.

Done this <u>23rd</u> day of <u>October 2006</u>.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

143449